IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH THE CELLULAR TELEPHONE
ASSIGNED CALL NUMBER
**(406)250-8949**, [WITH
INTERNATIONAL MOBILE
SUBSCRIBER IDENTITY /
ELECTRONIC SERIAL NUMBER
357855104979063], THAT IS STORED
AT PREMISES CONTROLLED BY
**Verizon Wireless**

Case No.  MJ 22-39-M-KLD

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Federal Bureau of Investigation (FBI) Task Force Officer (TFO) Ryan

Stoll, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant

for information associated with a certain cellular telephone assigned call number,

(406) 250-8949, with International Mobile Subscriber Identity/Electronic Serial

Number 357855104979063 ("the SUBJECT PHONE"), that is stored at premises

controlled by **Verizon Wireless**, a wireless telephone service provider located at

180 Washington Valley Road, Bedminster, New Jersey 07921.  The information to

be searched is described in the following paragraphs and in Attachment A.  This

affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **Verizon Wireless** to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a TFO with the FBI and Detective with the Flathead County Sheriff's Office (FCSO). I have been employed as a Deputy in the state of Montana since June of 2012 and as an FBI TFO since March of 2022.   I have served in the FBI's Salt Lake Division, Kalispell Resident Agency, since March of 2022.  As a TFO, I am statutorily charged with investigating federal criminal violations, authorized to investigate violations of laws of the United States and authorized to execute warrants issued under the authority of the United States.  I have been an investigative case agent involving state and federal law violations including homicides, assault, assault on an officer, firearms offenses, sexual assault, child abuse, strangulation, narcotics offenses, and financial crimes.  In the course of these investigations, I have obtained and executed search and arrest warrants.  As a Deputy and/or TFO of the FBI, I have had training and experience dealing with multiple criminal investigations involving the use of investigative methods related to electronic, computer, and internet-based crimes. I have

2

participated in training related to electronic-based crimes and investigative

techniques. I am familiar with and have participated in the normal methods of

investigation, including but not limited to, the general questioning of witnesses and

suspects, the review of phone and computer records, physical surveillance, and the

detection and collection of evidence. I have investigated crimes involving

electronic evidence, text messages, and social media apps.

3.      The facts in this affidavit come from my personal observations, my

training and experience, and information obtained from other officers and

witnesses. This affidavit is intended to show merely that there is sufficient

probable cause for the requested warrant and does not set forth all of my

knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to

believe that a violation of 18 U.S.C. 1951, Hobbs Act Robbery, has been

committed by Grant Alan West.  There is also probable cause to search the

information described in Attachment A for evidence of this crime as further

described in Attachment B.

## PROBABLE CAUSE

5.      Shortly after 7:00 p.m. on April 13, 2022, Columbia Falls Police

Department (CFPD) Officers were dispatched to the Super 1 Grocery Store in

Columbia Falls, to a report of an armed robbery at the Logan Health Pharmacy inside the grocery store.

6.      Upon arrival at the Super 1 Grocery Store, officers interviewed Victim 1, Victim 2, and Victim 3. All three victims stated they were about to close the pharmacy for the day when a man wearing a beanie, sunglasses, and a mask came into the pharmacy, brandished a black handgun with a small amount of orange on it, and said "Percocet 10". Victim 1 grabbed a bottle of Percocet and put it in a tote bag the man carried. The three employees then went into a bathroom internal to the pharmacy and the man directed them to wait several minutes before they came out. When they came out of the bathroom, they called police and reported the robbery.

7.      CFPD Officers and the pharmacy employees then reviewed the Super 1 security system videos. The videos depicted a man with a beanie, sunglasses, mask, maroon sweatshirt, black pants, and white shoes, walking with a limp. The man entered the store shortly before 7:00 p.m. and entered the pharmacy at approximately 7:00 p.m., brandishing what appeared to be a firearm, and departed the pharmacy after having something dropped into a shopping tote bag.

8.      Victim 1 told officers she was personally acquainted with the man who robbed the store. She identified him as Grant West and said she recognized his voice, stature, limp, and shoes. She recognized his shoes from a previous occasion

4

when she interacted with him at the pharmacy. Victim 1 told Victim 2 and Victim 3 that she recognized West while they were in the bathroom waiting for him to leave.

9.      CFPD officers arrested West at his residence, 136 Braig Road, Columbia Falls, Montana, later the night of April 13th, 2022. A bottle of Percocet was in West's pocket at the time of his arrest. West was Mirandized and interviewed at CFPD by CFPD Detective (Det.) McConnell. West provided the following information: West had been dealing with pain since October 2011 and had a limp. West was recently prescribed Percocet for his back and he took (3) 10mg Percocet per day. When asked what happened at Super 1, West said he was still trying to figure it out. West said he was not at Super 1. West was confronted by the fact that his brother told law enforcement he left his residence in his vehicle and did not get home until around 7:30. West then stated he had never left his residence. West said a friend from down the street named Jimmy (Last Name Unknown) came by and borrowed his car, saying he was going to the store, then came back and dropped it off shortly after 7:00 p.m. West said Jimmy lived in the trailer court nearby but did not believe he walked with a limp.

10.      West's residence was secured and a search warrant was executed on the residence and his vehicle at approximately 2:45 a.m. on April 14th, 2022.  A pair of white shoes matching the description of the shoes Victim 1 described the

pharmacy robber wearing was seized from inside the residence.  Additionally, a dark colored beanie and a Hi-point 9mm handgun with orange front and rear sights and an orange safety selector switch indicator was seized from West's residence. This firearm met the general description of the firearm described by Victims 1, 2, and 3. A blue and white mask matching the description given by the pharmacy workers and the security video was seized from West's vehicle.

11.    During a brief with Det. McConnell on the case after the fact, he indicated he observed a cell phone in West's residence. He noted it was out of battery during their search warrant and that he ultimately did not seize the cell phone. West's known phone number is 406-250-8949.

12.    FBI Task Force Officer Shane Lidstrom and I interviewed West again at the Flathead County Jail on April 14th, 2022. West provided the following information: West re-iterated remembering Jimmy stopping by to borrow his vehicle and coming back approximately 20 minutes later. West said Jimmy lived down the road in the trailer park, but could not identify exactly which trailer Jimmy lived in. West said Jimmy was about West's size, and kind of scrawny. West said Jimmy was wearing a red sweater hoody sweatshirt, black windbreaker pants and a beanie. West said Jimmy had never borrowed his vehicle previously and confirmed he had a prescription for Percocet. West said he was acquainted with one of the women who worked at the pharmacy.

6

13.     During a follow-up interview on April 19th, 2022, Victim 1 told me she did not believe the shoes seized by law enforcement were the exact ones West wore during the robbery and thought the handgun might have had more orange on it.

14.     During a follow-up interview on April 21st, 2022, Victim 2 told me that once Victim 1 told her it was Grant West, Victim 2 realized she also recognized the man robbing the pharmacy to be West. Victim 2 recognized West's voice, which was particular and soft, his limp, and his stature. Victim 2 had interacted with West on 4 to 6 occasions previously. Additionally, Victim 2 noted the pharmacy robber said, "Thank you" to Victim 1 when she put the Percocet in his tote bag. Victim 2 thought it would be characteristic of West to say "Thank you" because he had been polite and friendly on previous occasions. Victim 2 identified the firearm seized from West's house to be identical or nearly identical to the one used by the pharmacy robber.

15.     During a follow-up interview on April 21st, 2022, Victim 3 told me the firearm looked similar to the one used during the robbery, but believed the orange accents may have been in a different spot. Victim 3 said the robber pointed the gun at all three women in the pharmacy. Victim 3 did not recognize West and had never met previously. Victim 3 typically worked only one day a week.

7

16.     I listened to a specific recorded jail phone call between West and his mother, Carmen West, placed on April 16th, 2022 at 9:02 a.m. West asked Carmen to get his phone from his dad. Carmen was curious as to why West's father had his phone since he never leaves without his phone. West stated he doesn't leave without his phone.

17.     FBI Special Agent Trevor Hare submitted a preservation request for West's known phone number on April 15th, 2022.

18.     Based on my training and experience in law enforcement and my understanding of current social culture, cell phones are most commonly carried on one's person or during transportation throughout criminal activity and daily activities. Assuming West had on his person or vehicle during the timeframe of this offense, the cell-site information from the phone would further substantiate evidence and interviews.

19.     On 5/16/2022, FBI Resident Agency Specialist Julie Fowler received the requested IMEI number via a subpoena to Verizon Wireless. The records indicate the IMEI number is "357855104979063" with the listed subscriber to be Tracfone for the phone number associated with Grant West, (406) 250-8949.

20.     In my training and experience, I have learned that **Verizon Wireless** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that

8

allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records" including more precision location information referred to as RTT.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21.     Based on my training and experience, I know that **Verizon Wireless** can collect cell-site and RTT data about the SUBJECT PHONE.  I also know that wireless providers such as **Verizon Wireless** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.  A preservation request letter was submitted to Verizon on April 15th, 2022.

9

22.    Based on my training and experience, I know that wireless providers such as **Verizon Wireless** typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as **Verizon Wireless** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

23.    Based on my training and experience, I have learned that information (similarly to information obtained via a pen register trap and trace) associated with the SUBJECT PHONE such as all dialing, routing, addressing and signaling information associated with each communication to and from the SUBJECT PHONE, including, but not limited to any unique identifiers associated with the cell phone, including ESN, MEIN, MSISDN, IMSI, IMEI, SIM, or MIN; source and destination telephone numbers, email addresses associated with the account,

subscriber information and any changes to subscriber information, and date, time, duration, connected to, and dialed number of all communications associated with the SUBJECT PHONE can be extremely useful when attempting to locate a suspect or identify his or her past historical location.  By analyzing the incoming and outgoing phone numbers along with the duration, date, and time of who the subject (SUBJECT PHONE) is communicating with through the cellular service provider's records can assist law enforcement in identifying the other party to the call.  By running those telephone numbers through normal investigative steps and searches through open source public databases, this can lead to the identification of specific locations such as a hotel, residence, or other type of physical address. When used in conjunction with cell-site and other precision location information can lead to identifying and confirming specific addresses or areas of interest where the subject is or has been. This information is also necessary and part of the service provider's call detail records (ordinary business records) associated with historical cell-site information and is necessary to gain a more complete understanding and more accurate view of a subject's historical and perspective location. Additionally, obtaining information about the cellular device itself such as the ESN, MEID, IMEI in order to identify the make and model of the phone may become necessary if further location information is requested from other communication providers. Also, once the subject has been taken into custody, this identifying account

11

information (to include email addresses and subscriber information may also be necessary for evidentiary purposes to identify the cellular records with the subject's phone itself on a particular date and time. Furthermore, other identifying information such as subscriber information, email addresses associated with the user of the account, all assist law enforcement identify and confirming the end user (subject) to the account maintained by the service provider. This information may also help identify if the subject discontinues service, changes devices (such as IMEI, ESN, MEID), or if someone else begins using this telephone number after the subject terminates the account or provides the phone to another user.

## **AUTHORIZATION REQUEST**

24.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25.    I further request that the Court direct **Verizon Wireless** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **Verizon Wireless,** who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/s/ Ryan Stoll

Ryan Stoll
Task Force Officer
FBI

Subscribed and sworn to ~~before~~ me on ___May 19___, 2022__
↳ by telephone pursuant to F. R. Cr. P. 4(d) and 4.1

KATHLEEN L. DESOTO
UNITED STATES MAGISTRATE JUDGE

13